[Civ. Nos. 14756, 14959. First Dist., Div. One. Jan. 18, 1952.]

DOROTHY FREITAS, Respondent, v. PEERLESS
STAGES, INC., Appellant.

Campbell, Hayes & Custer, Daniel M. Feeley and Edward J. Niland for Appellant.

Edward M. Fellows and Emery J. Delmas for Respondent.

PETERS, P. J.—These two appeals have been consolidated. One (1 Civ. 14756) is from a judgment in favor of the plaintiff in a negligence action, and the other (1 Civ. 14959) from an order after judgment purporting to correct the language of a certain instruction as that instruction appears in the reporter's transcript.

## *Appeal No. 14756; Facts.*

Dorothy Freitas lives in Santa Clara and works in Milpitas. She is a regular rider of defendant's bus. On September 5, 1947, she was a paying passenger on the bus riding from Milpitas to San Jose. Her husband had got on the bus at Centerville. At Centerville the bus was 15 minutes late. At Milpitas it was 12 minutes late.

Mr. and Mrs. Freitas customarily got off the bus at First and Santa Clara Streets in San Jose, the intersection at which the accident giving rise to this action occurred. First Street runs north and south; Santa Clara Street runs east and west. The bus was traveling west on Santa Clara Street. The northeast corner of the intersection is occupied by a Roos Bros. store; the northwest corner by a J. C. Penney store. Traffic at the intersection is controlled by traffic lights. It had long been the admitted practice of the drivers of this bus line, when travelling west, to allow passengers to alight either in front of Roos Bros. or in front of the J. C. Penney store, depending upon the traffic signal; that is, if the light was red when the bus arrived, the bus would stop in front of Roos Bros. and allow the passengers to get off, but if the light was green when the bus arrived it would proceed across the intersection and allow the passengers to get off in front of the J. C. Penney store.

Mr. and Mrs. Freitas were sitting on a double seat about a third of the way from the front of the bus, with Mrs. Freitas next to the aisle. One of the other passengers signalled the driver to stop at the intersection, and Mrs. Freitas, as the bus approached the intersection, got up and started towards the front of the bus holding on to the aisle seat. She testified that when she was about five rows from the front of the bus

it came to a "terrific" stop which whirled her around and threw her backward; that the jerk threw her down in the aisle; that she bumped her knee on the floor and struck the back of her head on the coin box; that she estimated the speed of the bus just before it stopped at 20 or 25 miles per hour; that before she fell she could not see the traffic light at the corner; that when she first arose from her seat the bus was just entering the east crosswalk of the intersection; that she did not notice traffic near the bus; that she was not carrying any bundles and had her purse under her arm.

Most of this testimony was corroborated by Mr. Freitas. He testified that when his wife started forward he got up intending to follow her; that before he got out from between the seats the bus came to a sudden stop; that when he arose, and while the bus was still in motion, he noticed that the controlling traffic light was yellow; that at that moment the bus was at the beginning of the Roos Bros. building, about the length of the bus from the intersection; that the bus came to its sudden stop after it had proceeded into the marked east crosswalk about 2 feet; that when he saw the yellow light he did not see any automobile in front of the bus, but that when the bus stopped he observed an automobile in front of the bus; that the bus driver stated that he "had to stop cold to avoid hitting the car ahead of me." He estimated the speed of the bus just before it came to a sudden stop at 20 miles per hour. He testified that after his wife got up from her seat the bus speeded up, and that she had only taken a half step forward before the bus stopped.

The driver of the bus was Alvin Still. He testified that as he approached the intersection in question there were three automobiles in front of him; that these cars stopped because the light was red; that when the light changed to green the three automobiles proceeded across the intersection safely; that he proceeded to follow them; that as he came into the crosswalk an automobile made a left-hand turn in front of him and that he had to stop suddenly to avoid hitting that car; that he was then about 6 feet into the intersection; that just before he stopped he was in low gear and not going over 9 miles an hour; that he came to a stop within "inches" of the car that was turning in front of him. He stated that he had no recollection of the make or age of this car, nor did he remember the number of its occupants. He had no recollection of whether or not he was late or on time at the time of the accident, but did admit arriving late at the depot, after the accident. He testified that the bus in question was new, was

equipped with air brakes, and, at a speed of 9 miles per hour, could be stopped in 6 to 8 inches.

The driver denied knowledge of the fact that Mrs. Freitas had fallen. He testified that when he stopped, one woman, a Mrs. Bell, did fall near the front exit, but that was the only person he saw fall. Mrs. Freitas had testified that she was thrown forward and hit her head on the coin box right beside the driver. Both she and her husband testified that after the accident the driver just sat there, and that Mr. Freitas picked up Mrs. Freitas and Mrs. Bell from the floor. The driver testified that he started to help Mrs. Bell, but that Mr. Freitas got there first. He also testified that he took Mrs. Bell's name and address and tried to ascertain if she was hurt. He stated that neither Mr. nor Mrs. Freitas said a word to him as they got off the bus, and made no complaint. Admittedly neither Mr. nor Mrs. Freitas then reported to the driver that Mrs. Freitas had been hurt, but several days later reported the injuries to the manager of the bus company.

On this appeal no contention is made that the jury award of $6,500 was excessive, so that the extent and nature of the injuries need not be discussed except to say that respondent suffered a contusion on the back of her head, and a neck and back sprain that aggravated an existing arthritic condition. No contention is made that the evidence is not sufficient to sustain the judgment.

### Did the Allegations of the Complaint Preclude the Application of the Doctrine of Res Ipsa Loquitur?

The trial court instructed on the doctrine of res ipsa loquitur. Appellant argues that the complaint alleges negligence specifically, and that such fact precludes the application of the doctrine. The challenged allegation is as follows: ''That at said time and place defendant DOE ONE so negligently and carelessly drove and operated said Peerless bus that the same was caused suddenly and violently to jerk, bump and stop; that as the proximate result of the negligent and careless operation of said bus by defendant DOE ONE, plaintiff was violently knocked to the floor of said bus and suffered severe personal injuries . . .''

The California cases are in hopeless conflict as to what constitutes a general and what a specific allegation of negligence for the purpose under discussion, and as to the legal effect of pleading negligence specifically. (See cases collected by Prosser, Res Ipsa Loquitur in California, 37 Cal. L.Rev. 183, 214.) As a matter of logic it would seem that,

if the above allegation be deemed to be specific, the only legal result that would follow would be that the inference of negligence would be limited to the sudden stopping of the bus and the respondent would be precluded from relying upon other acts of inferred negligence. (*Wills* v. *Price*, 26 Cal. App.2d 338 [79 P.2d 406] ; *Phillips* v. *Southern Cal. E. Co., Ltd.*, 23 Cal.App.2d 222 [72 P.2d 769] ; *Mintzer* v. *Wilson*, 21 Cal.App.2d 85 [68 P.2d 370] ; *Atkinson* v. *United Railroads of S. F.*, 71 Cal.App. 82 [234 P. 863].) Independent of this reasoning, the cases in California clearly establish that pleading negligence in the fashion above set forth does not preclude the plaintiff from relying upon the doctrine. Within the meaning of the cases the above is either a general allegation or a mixture of general and specific. In either event, the doctrine is applicable. (*Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008].)

Appellant places its main reliance upon the case of *Pellegrino* v. *Los Angeles Transit Lines*, 79 Cal.App.2d 40 [179 P.2d 39]. There the challenged allegation was as follows (p. 43) : ''the defendant Los Angeles Railway Corporation through and by its agents and servants did carelessly, and unskillfully operate said street car, and not using the proper degree of care and [sic] caused said street car to start up and as a direct and proximate cause of the negligence of the defendants as aforesaid plaintiff sustained an injured shoulder. . . .''

The appellate court held that this constituted a specific allegation of negligence and that for that reason the doctrine of res ipsa loquitur was not applicable. No hearing in the Supreme Court was requested. The case is contrary to a long line of other cases, and is not supported by the main authority relied upon in the opinion—the case of *Davidson* v. *American Liquid Gas Corp.*, 32 Cal.App.2d 382 [89 P.2d 1103]. In that case an allegation that the defendant negligently allowed gas to escape and ignite was held not to preclude the application of the doctrine. The court stated (p. 386) : ''No attempt was made to describe the negligence in detail or charge why or under what circumstances it occurred. Such an allegation is analogous to a complaint of an injury by a guest in an automobile who alleges that the operator so negligently and carelessly drove and operated the car as to strike an obstruction, causing the injury complained of, or of a brick falling from a building upon a passerby below and inflicting damage.

We are of the opinion, therefore, that the form of the complaint is not such as to prevent the application of the doctrine.''

One of the most recent cases demonstrating that allegations of the type here involved do not prevent the application of the doctrine is *Gish* v. *Los Angeles Ry. Corp.*, 13 Cal.2d 570 [90 P.2d 792]. In that case the challenged allegation was as follows (p. 571): ''That on or about the 30th day of July, 1936, while plaintiff, Katherine M. Gish, was riding as a passenger for pay on the 'L' car of said defendant at or near Ninth and Westlake in the City of Los Angeles, County of Los Angeles, State of California, defendant, without regard to the rights of plaintiff, so negligently, carelessly and recklessly suddenly stopped said car with a tremendous jolt and shock as to throw plaintiff, Katherine M. Gish, against the inner portion of said railway car, severely and seriously injuring said plaintiff physically in such a manner as to cause her severe and grievous physical and mental suffering.''

After analyzing many decisions as to what are general and specific allegations the court stated (p. 583):

''Again, in the instant case, referring to the language which was employed by the plaintiffs in their allegation of the negligent act of the defendant, to wit, that the street car was negligently and suddenly stopped 'with a tremendous jolt and shock,' it is apparent that the plaintiffs merely alleged the *effect* [italics by the court] of the act of the defendant in causing the street car to be suddenly stopped. The particular conditions which may have been the inducing cause of the 'tremendous jolt and shock' which occurred to the street car on the sudden stopping thereof were omitted from the allegations that were contained in the complaint. Not a word was used by plaintiffs to describe in detail or otherwise any assumed negligent act of the defendant, or to narrate any facts with reference to the control by it of the street car, which either immediately or ever preceded the happening of the accident. In other words, no attempt in any way was made by plaintiffs to account for the sudden stop, or to explain the cause thereof. All that was disclosed by the facts which were alleged by plaintiffs in their complaint was the result which ensued from some apparently unknown primary cause.

''It becomes manifest, therefore, that notwithstanding the fact that by their pleading both general and special negligence was alleged, plaintiffs should not have been deprived of the benefits to which they were entitled in the application of the doctrine of *res ipsa loquitur*.''

### Did the Evidence Offered by Respondent Preclude the Application of the Doctrine of Res Ipsa Loquitur?

Appellant next refers to the evidence produced by respondent of the speed of the bus, that it was late, that its speed was increased just before it was stopped, that just before it stopped the traffic light was yellow, etc., and contends that respondent thus produced specific proof of the act or acts of negligence which caused the accident. This, so it is urged, prohibited the application of the doctrine of res ipsa loquitur.

The California cases on this subject are not as clear as might be desired. (See discussion and collection of cases, Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 212-214.) ■ The more recent and better reasoned cases hold that proof of specific acts of negligence does not preclude the application of the doctrine except where the proof dispels the inference of negligence as a matter of law. ■ Except in this limited situation the inference of negligence may be drawn in support of the specific proof. In the instant case no contention is or can be made that the specific proof dispelled the inference as a matter of law.

This problem was discussed at length in *Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008]. There the plaintiff had alleged that defendant negligently maintained its tracks and right of way, thereby causing a train travelling thereon to become derailed, and resulting in a collision with the train upon which decedents were riding as members of a train crew. Plaintiff proved an improperly maintained roadbed caused a rail to break, which was followed by derailment. Under these facts, the opinion holds that the plaintiff was still entitled to an instruction on res ipsa loquitur. After a long discussion of the problem the court concluded (p. 622): "Hence, we conclude that evidence of specific acts of negligence does not deprive plaintiff of the benefit of the doctrine, unless the case is one where the inference would be dispelled as a matter of law under the same rules that apply in cases generally." While there were three dissenting justices in the Leet case, no one dissented on the point now under discussion. The holding in that case is controlling here.

### Did the Instructions Improperly Assume the Occurrence of an Accident to Respondent?

In its answer appellant denied that Mrs. Freitas had been injured in an accident. The driver did not deny that Mrs. Freitas fell, but he did testify that the only person he saw fall was Mrs. Bell. Neither respondent nor her husband com-

plained to the driver about respondent being injured. There is no doubt that, under the evidence, the testimony of the driver, if believed, would have supported an inference that respondent was not involved in any accident on the bus.

The court instructed on res ipsa loquitur. It first instructed: "If, and only in the event, you should find that the plaintiff suffered injury proximately resulting from the accident in question, you will be guided, in determining the issue of liability, by the following instruction:" and then gave the following: "From the happening of the accident involved in this case, as established by the evidence, there arises an inference . . ."

Appellant argues that, by this last quoted instruction, the trial court did not submit to the jury the question of whether or not the accident to respondent occurred at all, but improperly assumed the existence of such an accident. It is argued that the court should have given an instruction to the effect that only if the jury found that an accident had occurred to plaintiff should it indulge in the inference, and appellant quotes the type of instruction that it believes should have been given on the subject.

While the instructions complained of could undoubtedly have been clearer, the difficulty is that appellant failed to request that the instruction he now claims it was error to omit should have been given to the jury. In the absence of a request for clarification, appellant is in no position to complain. (See cases collected and commented upon 24 Cal. Jur. p. 796, § 74.)

### Did the Court Give Proper Instructions on the Doctrine of Res Ipsa Loquitur?

Appellant next challenges the instructions on the ground that they told the jury that it could draw the inference of negligence from the mere fact that an injury occurred to respondent while she was on a vehicle operated by appellant.

It is undoubtedly the law that mere proof of injury to a plaintiff while riding on defendant's train or bus does not alone give rise to the inference, and *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533], so held. But here the court did not give the broad instruction which, if given, would have been error. After giving the instructions already quoted the court instructed that those instructions were based on a special doctrine which may be applied "under special circumstances," those circumstances being: "First: The fact that some instrumentality, such as the bus, by which

injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendant at the time the cause of injury was set in motion, it appearing on the face of the event that the injury was caused by some act or omission incident to defendant's management.''

This instruction completely answers the contention of appellant. It is quite similar to the instruction held to be proper in the Mudrick case, *supra*. In other words, while appellant's statement of the law is undoubtedly correct, the instructions simply do not state what it claims they state.

It is also contended that the instructions on res ipsa loquitur should have stated that the doctrine only applies if the jury should first find that the plaintiff had not been guilty of contributory negligence. The jury was instructed clearly and properly on the doctrine of contributory negligence. ■ There is no requirement that the instructions on res ipsa loquitur must, within themselves, be qualified by a reference to the doctrine of contributory negligence. The instructions on contributory negligence clearly and correctly expressed that doctrine to the jury.

Appellant also argues that the following instruction directed the jury to draw the inference of negligence rather than permitting it to draw it: ''From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise the utmost care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part.''

■ Of course the weight to be given the inference of negligence under the doctrine is for the jury. What weight should be given differs according to the facts of each case and the relationship of the parties. (See Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 231.) ■ We are dealing with the relationship of carrier and passenger where the carrier owes the highest duty of care towards its passengers. In such cases, even if the burden of proof to disprove negligence is not shifted to the carrier, certainly the inference

of negligence is much stronger than in cases where the relationship of carrier and passenger does not exist.

The above instruction is not worded as clearly as might be desired. The words "there arises an inference" might be interpreted to mean that the inference is compulsory and that the jury had no choice but to accept it. But that construction is not the only reasonable construction of the words used. The jury was correctly instructed on the burden of proof, and correctly told that the defendant could overcome the inference. Under the circumstances, while the instruction is not the best that could be given, the giving of it is not error, at least where qualified by other instructions.

### *Was There Prejudicial Misconduct by Counsel for Respondent?*

The last major point raised by appellant on the main appeal is that counsel for respondent in his argument to the jury insinuated that appellant had wilfully suppressed evidence. It is urged that these remarks constituted reversible and prejudicial error.

During the course of his argument counsel for respondent pointed out that the driver of the bus admitted that he saw Mrs. Bell fall and that he had taken her name and address. Counsel then pointed out that Mrs. Bell had not been produced by appellant, or her absence explained, and then stated that the jury could infer that, had she been produced, she would have corroborated the story told by respondent and her husband. He elaborated on this theme at some length. No objection was made to this portion of the argument when it was made, but at the conclusion of the argument the following occurred:

"MR. HAYES: If your Honor please, I want to assign Mr. Delmas' remarks about Mrs. Bell as prejudicial misconduct. There is no evidence that Mrs. Bell was available to us. She wasn't in fact available.

"MR. DELMAS: I'm going to object to counsel testifying, and I ask that remark be stricken from the record. There is no such evidence of that, and if they could have produced it, they should have produced it at the proper time.

"MR. HAYES: Your Honor, there is no evidence that Mrs. Bell was available here.

"MR. DELMAS: That is up to them to prove since they had it within their power to present it.

"Mr. Hayes: There is no evidence that we had it within our power.

"The Court: Counsel, I think that is a matter that ought to be heard out of the presence of the Jury. I'll take a short recess and listen."

In chambers, counsel argued over the propriety of the challenged remarks and counsel for appellant stated that Mrs. Bell was in the Philippine Islands, and requested permission to make a statement to the jury as to where Mrs. Bell was then living. This request, opposed by respondent, was denied by the court, the judge stating that he would have granted it had it been made before the case was closed. The court thereupon denied the motion based upon the claimed misconduct.

The counsel then returned to the courtroom and counsel for appellant proceeded to argue to the jury. In spite of the court's ruling in chambers denying permission to counsel for appellant to explain where he had been informed Mrs. Bell was, counsel made two references to the subject. They are as follows:

"The driver knew of only one person being hurt, Mrs. Bell. At that time three—what is it, about three and a half years ago from today he took her name and address, he hadn't seen her since."

"Now, the driver got the name of Mrs. Bell in September 5, 1947, which is two and a half years ago, a little bit more—not three and a half. He got her name and address. Now, much to do has been made about that, and it has been said that we had her name and address three and a half years ago. Why don't we produce her here in Court today? One very good reason: We can't find her."

During the course of the arguments no request to admonish the jury to disregard the remarks or to strike them was made, but in its instructions the court stated: "You shall not consider as evidence any statement of counsel made during the trial, unless such statement was made as an admission or stipulation conceding the existence of a fact or facts."

Appellant makes much of the above incidents and contends that such argument to the jury was erroneous and prejudicial. It must be remembered that it was the driver of appellant's bus that testified that he saw Mrs. Bell fall, and that he took her name and address. During the trial appellant made no explanation of why Mrs. Bell was not produced. Under

such circumstances, it would seem to be a reasonable and permissible inference that Mrs. Bell was not produced because her testimony would have been adverse. In fact, under such circumstances such is not only a possible and reasonable inference but it is made, in this state, a statutory presumption. Section 1963, subdivision 5, Code of Civil Procedure, provides that it is a rebuttable presumption "That evidence wilfully suppressed would be adverse if produced." (See, also, Code Civ. Proc., § 1963, subd. 6.) Thus it was proper for respondent's counsel to comment on the appellant's failure to produce Mrs. Bell in his argument to the jury. The proper rule, supported by the citation of many cases, is stated as follows in 10 California Jurisprudence, page 781, section 87: "The failure of a party to call a witness may, under some circumstances, give rise to adverse presumptions. And it is within the legitimate range of argument for an attorney, in his closing speech to the jury, to comment upon the failure of the opposing party to produce certain persons as witnesses." (See, also, *Leenders* v. *California Hawaiian Sugar Ref. Corp.*, 59 Cal.App.2d 752 [139 P.2d 987]; *Estate of Moore*, 65 Cal.App. 29 [223 P. 73]; *Dahl* v. *Spotts*, 128 Cal.App. 133 [16 P.2d 774]; *Simpson* v. *Bergmann*, 125 Cal. App. 1 [13 P.2d 531]; *Gluckstein* v. *Lipsett*, 93 Cal.App.2d 391 [209 P.2d 98].) The same rule is stated as follows in 24 California Jurisprudence, page 745, section 28: "Where it is in the power of a party to call a witness who can corroborate or disprove testimony, the failure to call such witness is a legitimate subject of comment to the jury, providing counsel acts in good faith with no desire to make an unwarranted appeal to passion or prejudice." (See, also, *Winkie* v. *Turlock Irr. Dist.*, 24 Cal.App.2d 1 [74 P.2d 302]; 2 Wigmore on Evidence, (3d ed.,) p. 166, § 286.)

 The court likewise acted within its discretionary powers in refusing to allow counsel for appellant to state as a fact what his information was as to the present residence of Mrs. Bell. No motion to reopen was made. If counsel had such evidence it should have been properly introduced during the course of the trial.

*The Order Made After Judgment Correcting the Language of an Instruction—Appeal No. 14959.*

After the appeal from the judgment had been perfected, appellant requested respondent to stipulate that certain instructions had been given at her request. Respondent refused

so to stipulate unless appellant would stipulate that the language used in a certain instruction as it appears in the reporter's transcript should be changed to reflect what the judge actually stated. Appellant refused so to stipulate, and filed a motion in this court to augment the record to show at whose request the various instructions had been given.

In the meantime, and some six months after the appeal had been perfected, respondent moved the trial court to correct the language of the instruction in question "to conform with the instruction as actually given by the Court." This motion was supported by affidavits, was then heard by the same judge who had tried the case, evidence was taken, argument had, and the trial court entered its order granting the motion "as prayed for, and ordered that the transcript be corrected accordingly." Thereupon respondent moved this court to augment the record on appeal in accordance with the order of the trial court.

The two motions to augment the record were heard by this court on its January, 1951, calendar. By stipulation appellant's motion was granted. On respondent's motion it was argued by appellant that the perfecting of the appeal deprived the trial court of the power to correct the transcript, and that therefore the order correcting the transcript was void. Although it is quite possible that a trial court possesses the power to correct a transcript and make it speak the truth even though an appeal has been taken, out of an abundance of caution this court, acting under rule 12(c), ordered the entire record on appeal returned to the trial court with instructions to the trial judge to ascertain whether the challenged instruction had been correctly transcribed. On February 1, 1951, this matter came before the trial judge, who was the same judge who had tried the case and who had made the original order of correction. On stipulation the parties agreed to submit the matter on the record of the prior hearing. The court thereupon entered its order correcting the challenged word by substituting another word "as the word actually used and spoken by the trial court in instructing the jury." It is from this order that the present appeal has been taken.

 The change in the instruction in question was to change the word "event" therein appearing to the word "absence." As it originally appeared in the reporter's transcript the instruction read: "When all these conditions are found to have existed, the inference of negligence to which

they give birth will support a verdict for the plaintiff, in the *event* of a showing by the defendant which offsets the inference.'' The challenged word has been italicized. As it reads above the instruction is confusing, incorrect and meaningless. With the word ''absence'' substituted, the instruction is clear and correct. Respondent contended before the trial court that the transcription by the reporter was in error and that the instruction as actually given contained the word ''absence.''

There was considerable evidence before the trial court on this issue. The reporter at the trial was a stenotype operator. He was not available at the hearing of the motion to correct the transcript, but it was stipulated that, if present, he would have testified that he accurately reported all the instructions given, that he had reread his notes of the trial, that they correctly presented what the trial judge stated, and that the word in his notes was ''event'' and not ''absence.'' His partner reporters presented the notes and demonstrated that the word appearing therein was ''event.'' They admitted that which is somewhat obvious, namely, that reporters sometimes make mistakes and sometimes ''mishear'' a word.

There was considerable evidence in support of the finding of the trial court that the word used by it was ''absence.'' First, there is the fact that the trial judge who gave the instructions made the order correcting the transcript to make it reflect what he found to be what he actually said. Although the judge was not called as a witness at the hearing, his recollection, as evidenced by the order, is entitled to some weight. In addition, one of the counsel for respondent testified that he followed the instructions as given, carefully checking them with the proposed instructions of defendant and plaintiff, copies of which were before him; that he thus checked this instruction; that had the trial court used the word ''event'' it would have registered in his mind, and that it was his best recollection, to a moral certainty, that the word ''event'' was not used, and that the word ''absence'' was used. It was stipulated that co-counsel, if called, would have testified similarly. The court clerk, a law student, testified in substantially similar vein.

Appellant concedes that this court, under Rule 12(c), is authorized to submit differences of the parties over the correctness of the record to the trial court, but contends that the trial court acted arbitrarily in making the order because, so it is claimed, the evidence does not support it. Of course,

if that order is supported by any substantial evidence or by reasonable inferences from that evidence, it cannot and should not be disturbed by an appellate court. (See discussion and cases collected 2 Cal.Jur. p. 939, § 553.) It is quite apparent that the evidence above summarized amply supports the questioned order.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.