[Civ. No. 17617.   First Dist., Div. One.   Nov. 21, 1958.]

SARA FERRATE, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation), Appellant.

Hardin, Fletcher, Cook & Hayes, Cyril Viadro and Donahue, Richards & Gallagher for Appellant.

Bernard Allard and Leon G. Seyranian for Respondent.

ST. CLAIR, J. pro tem.*—Defendant Key System Transit Lines appeals from a judgment on the verdict of the jury entered in favor of the plaintiff in a personal injury action. Defendant complains of a portion of the argument of plaintiff's attorney to the jury, and the giving of certain instructions.

### Statement of the Case

The plaintiff proved that she entered a bus of defendant's, and paid her fare. Before she was seated the bus started up and then abruptly stopped. She was thrown against the front end of the bus and injured.

*Assigned by Chairman of Judicial Council.

The plaintiff, relying upon the applicable doctrine of res ipsa loquitur, rested.

The defendant, to meet the inference of negligence on its part, raised by the doctrine, went forward to meet its burden. The driver testified to an emergency created by a speeding automobile coming from his right, as he went into the intersection.

The defendant called two of the passengers who had been sitting side by side on a seat running parallel to the bus, across from the driver. Both had previously worked for defendant. Both supported the bus driver in his testimony as to the emergency.

There were several other passengers in the bus. The driver, after the accident, passed out cards, presumably to all of the passengers. The cards carried a place for the name and address of a passenger and apparently, from the colloquy between counsel, were passed out in the hope that passengers would fill them out and return them to defendant.

There was no evidence of how many, if any, of the cards were returned to the defendant.

### *Did Statements of Plaintiff's Counsel During His Closing Argument to the Jury Constitute Misconduct?*

The defendant first complains of certain statements of plaintiff's attorney during the closing argument to the jury. The gist of the remarks is contained in the statements that "I can't imagine the Key System only producing two witnesses who were in a position to see anything when they had a bus load of people who were in a position to see something" and "[t]here wasn't a single person that was near that window that was on this witness stand. The only two that appeared were the two here." Defendant's attorney first made an objection on the ground that there was "no evidence Mr. Guerra [the bus driver] knew the names of any of the witnesses." Plaintiff's attorney then referred to the evidence that Guerra had passed out cards to the bus passengers. Defense counsel then objected that there was "no testimony that the cards were returned or if they were returned the people saw what happened." After another statement by plaintiff's counsel referring to the testimony that there was almost a full seatload on the bus, defense counsel stated, "Your Honor, for the third time I will object and I think the remark is misconduct and ask for a mistrial or in the alternative, for an admonition." The court responded, "As I recall it there

was no evidence any other cards came into the hands of the defendant.'' No further objections were made.

Defendant contends that the remarks were objectionable because they ''would have the natural effect, of implanting in the jurors' minds that defendant was suppressing evidence by its failure to call other witnesses.''

A good many cases are cited as bearing on this problem. It would appear that there are three separate lines of cases, two of which are not applicable here. Cases from all three groups are cited indiscriminately and quotations therefrom used.

The first nonapplicable group is where the court has given an instruction based on section 2061, subd. 7 of the Code of Civil Procedure to the effect that if weaker or less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust. The California cases have consistently held that this is not a proper instruction where it is a question of the number of witnesses called or of a lack of calling witnesses. See *Brown* v. *Sharp-Hauser Contracting Co.* (1910), 159 Cal. 89 at 96 [112 P. 874]; *Lawyer* v. *Los Angeles Pacific Co.* (1913), 23 Cal.App. 543 at 547 [138 P. 920]; *Wilson* v. *Crown Transfer etc. Co.* (1927), 201 Cal. 701 at 709 [258 P. 596]; culminating in *Hooper* v. *Bronson* (1954), 123 Cal.App.2d 243 at 252 [266 P.2d 590].

No such instruction was offered or given in the instant case. The second line of cases has to do with the rule of actual suppression of material evidence by failure, usually deliberate, to call a witness. One of the leading cases on this point is *Freitas* v. *Peerless Stages, Inc.*, 108 Cal.App.2d 749 at 759 [239 P.2d 671, 33 A.L.R.2d 778]. There are two later cases which illustrate the rule of the Freitas case, *Hays* v. *Viscome*, 122 Cal.App.2d 135 at 139 [264 P.2d 173], and *Talbert* v. *Ostergaard*, 129 Cal.App.2d 222 at 228 [276 P.2d 880]. In each of these three cases a single witness was not brought in. In the Freitas case, the witness could not be found in this state and the attorney for the party charged with suppressing her evidence was permitted to say so (even though it had not been proved) after the opposing counsel was permitted (by the trial and appellate judges) to draw the statutory adverse inference provided for in Code of Civil Procedure, section 1963, subsection 5. In both the Hays and the Talbert cases the witness was not put on as a bit of deliberate tactics by

counsel. In all three cases counsel was permitted to invoke the statutory presumption that evidence wilfully suppressed would be adverse if produced.

There was no evidence of deliberate suppression of evidence by not calling a witness that the record showed had some testimony that could support or destroy the legal position of the party accused of not calling the witness in question.

The third group of cases, or situation, is illustrated by cases which appear to bear directly on the instant problem. *Howard* v. *Clark* (1938), 29 Cal.App.2d 374 [84 P.2d 529], was a street car case. At page 381, the court said: "The defendants assert the plaintiff was guilty of prejudicial misconduct in inferring defendants had suppressed evidence. That assertion is based on these facts. The defendants called as a witness Glenn McDonnell who was the conductor on car H-7 at the time of the collision. On cross-examination he was asked if, after the accident, he solicited the names of witnesses. Defendants objected. The attorney for the plaintiff stated in explanation, 'If the gentleman made diligent efforts to get witnesses, then according to the rules of evidence he did not produce them that is a very material fact.' The court ruled the explanation was entirely improper. In making his closing argument to the jury the same attorney said, '. . . don't you think that if there were any witnesses—that there were witnesses that observed this accident known to the defendants here who have not been produced? What inference do you get from that?' The defendants promptly interrupted and assigned the remark as misconduct. The trial court stated to the jury there was no such evidence and directed the jury to disregard the statement. Conceding the acts and words of the plaintiff's attorney to have been error, we are wholly unable to hold such error caused a miscarriage of justice."

*Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595 [111 P.2d 346], is a case where the plaintiff slipped on the floor of the defendant's store. In his argument to the jury, counsel for the plaintiff called attention to the fact that no customers had been called by defendant as witnesses, only defendant's employees. The store had been crowded at the time of the accident. Counsel for plaintiff conceded that he was seeking only to make an inference, and the trial court so stated, and admonished that statements of counsel were not evidence. The appellate court said at page 606: "If we concede that the argument should not have been made . . .," and then,

after reviewing the authorities, refused to reverse on this ground.

The plaintiff argues that counsel's statements in the instant case did not charge deliberate suppression of evidence of known witnesses whose testimony would have been favorable to plaintiff but, rather, was an opinion of counsel prompted by an inference reasonably drawn from the evidence. Certainly the defendant started the chain of circumstances by handing out the cards at a time when any and all actions of defendant were probably relevant. In any event, the evidence of the distribution of the cards went in without objection.

In the absence of an explanation or description of the results of the chain of circumstances started by defendant, it is obvious that an inference can, in fact, be made one way or the other. Whether or not it may be legally made, properly hedged around with admonitions that it is an inference, we do not find it necessary to decide. Counsel for the defendant objected on the ground that the evidence did not show that the driver knew the names of any of the other witnesses, or that the cards asking for the names and addresses of the passengers had been returned to the driver. The court pointed out that there was no evidence that the cards had been returned, with which plaintiff's counsel agreed. The only objection voiced by defense counsel was pointed out to the jury by both the trial judge and defense counsel to be the case, and agreed to by counsel for plaintiff.

Although we were not furnished a transcript of the proceedings on the motion for new trial, it is quite clear from the briefs that the matter of the alleged misconduct of counsel was argued there. Such being the case, defendant is confronted with the rule that where the matter is presented to the trial court in support of a motion for new trial, the judge is in a better position than an appellate court to determine whether the verdict is due wholly or partially to misconduct of counsel and his conclusion will not be disturbed unless under all the circumstances it is plainly wrong. *Alberts* v. *Lytle*, 1 Cal.App.2d 682, 692 [37 P.2d 705] ; *Aydlott* v. *Key System Transit Co.* 104 Cal.App. 621, 629 [286 P. 456] ; *Lagomarsino* v. *Market St. Ry. Co.*, 69 Cal.App.2d 388, 398 [158 P.2d 982] ; *Walling* v. *Kimball*, 17 Cal.2d 364, 369 [110 P.2d 58].

Assuming the remarks of counsel to be error, we are wholly unable to hold such error caused a miscarriage of justice.

*Were the Instructions to the Jury Erroneous?*

*A. Res ipsa loquitur.*

■ The defendant complains of the following instructions, apparently not because they are erroneous under existing California law, but on the ground that they result in a "serious injustice" to the carrier and the law should be changed: "The carrier of passengers for reward is required to exercise the highest degree of care in their transportation and is responsible for injuries received by them while in the course of transportation which might have been avoided by the exercise of such care. Hence when it is shown that the injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in its business, there is an inference of negligence which imposes upon the carrier the burden of showing that the injury was sustained without any negligence on his part."

"From the happening of the accident involved in this case as established by the evidence, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference itself is a form of evidence, and if none other exists tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did in fact, exercise the utmost care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part."

The first instruction above was approved in *Cody* v. *Market St. Ry. Co.*, 148 Cal. 90, 92 [82 P. 666] (with the substitution of "presumption" for "inference" in the second sentence); and is taken from the language of *McCurrie* v. *Southern Pac. Co.*, 122 Cal. 558, 561 [55 P. 324]. Similar language is also found in *Scarborough* v. *Urgo,* 191 Cal. 341, 346 [216 P. 584].

The second paragraph is essentially a restatement of the principles embodied in the first. It was approved in *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432, 435 [260 P.2d 63], where the plaintiff claimed to have been injured in a similar manner as the plaintiff here. However, in that case, the court stated that the first sentence should have been modified to state that " 'If, and only in the event, you should find that there was an accidental occurrence as claimed by plaintiff,' "

then the consequences in the instruction followed, because there was a dispute as to whether the accident actually occurred. This error was held nonprejudicial. Such a modification would not be necessary here, because there was no dispute that the plaintiff fell on the defendant's bus, as the result of either a sudden stop or a sudden start. The instruction was also approved in *Kerr* v. *Key System Transit Lines*, 145 Cal. App.2d 631, 633-635 [302 P.2d 884] (passenger injured as the result of a fall when bus started with a jerk); *Freitas* v. *Peerless Stages, Inc.*, *supra*, 108 Cal.App.2d 749, 758 (same); *Silva* v. *Pacific Greyhound Lines*, 119 Cal.App.2d 284, 287 [259 P.2d 743] (plaintiff bus passenger injured in collision of bus and car); *Prunty* v. *Allred*, 73 Cal.App.2d 67, 71 [165 P.2d 935] (plaintiff bus passenger injured by suitcase falling from luggage rack).

In *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682 [268 P.2d 1041], appellants contended that the trial court erred in telling the jurors that the inference of negligence raised by the doctrine is mandatory rather than permissive. The instruction that " 'there arises an inference' " was given. The court discusses the problem, completely, noting the general rule that whether an inference is to be drawn is for the jury even in the absence of evidence to the contrary. However, the court said that this does not preclude the conclusion that in some cases the doctrine will give rise to a special kind of inference which the defendant must rebut, as this type of inference is somewhat akin to a presumption. The court notes that the view expressed in a few California cases holding that the triers of fact may accept or reject the inference where defendant offers no evidence is inconsistent with most of the California decisions and that there are substantial reasons why "we should hold that in every type of res ipsa loquitur case the defendant should have the burden of meeting the inference of negligence." (P. 691.) The court concludes that in all res ipsa loquitur situations the defendant must present evidence sufficient to meet or balance the inference of negligence. (See also Prosser, *Res Ipsa Loquitur in California* (1949), 37 Cal.L.Rev. 183, 220-221, for a complete discussion.)

In its reply brief, defendant argues eloquently for, but alas not with enough persuasiveness to cause, this court to accept its invitation to "lead in clarifying the res ipsa loquitur instructions which are now given in common carrier cases." It is not entirely clear just what steps defendant desires us to take.

If any of the instructions could have been clearer, then it was up to defendant to request that the instructions given be clarified or made more specific or that other qualifying instructions be given. No such request was made. (24 Cal.Jur. 796, § 74; *Taylor* v. *Luxor Cab Co.,* 112 Cal.App.2d 46, 55 [246 P.2d 45]; *Freitas* v. *Peerless Stages, Inc., supra,* 108 Cal.App.2d 749, 757.)

*B. Special Damages.*

■ Defendant complains of the following instruction as erroneous and confusing: "If your verdict is for the plaintiff, you may award her such damages within the amount named in the complaint, to-wit, the sum of $25,000, and in addition thereto the amounts placed on the blackboard, as, in your opinion, will reasonably and fairly compensate her for the injuries proved to have been sustained, if any, or reasonably certain to result therefrom in the future and proximately caused by the alleged negligence."

Defendant interprets this instruction as directing the jury to award plaintiff the amounts listed as lost wages and medical expenses, leaving for the jury's determination only the amount of general damages. Out of context, the instruction might be so interpreted. However, immediately following the above quoted instruction the jury was instructed that they might award to plaintiff if they found in her favor, the reasonable value of her medical care and the time lost from her occupation. In light of these instructions, the only reasonable interpretation that might be placed upon the instruction complained of is that the jury's function was to determine the reasonable amount of each item of damage and that the portion of the sentence beginning with "as" referred to both general damages and loss of earnings and medical care.

*C. Loss of Earnings.*

■ The defendant complains of the following instruction, contending that the italicized portions assume plaintiff was disabled, a question that should have been left to the jury: "You may also consider the reasonable value of the time lost by plaintiff since her injury *wherein she has been unable to pursue her occupation.* In determining this amount you should consider evidence of her earning capacity, her earnings and the manner in which she ordinarily occupied her time before the injury and find that she was reasonably certain to have earned in the time lost *had she not been disabled."*

Plaintiff states that the instruction, BAJI, 174-F, was ap-

proved in *Harris* v. *Security Trust & Sav. Bank*, 122 Cal. App.2d 512 [265 P.2d 555]. BAJI, 174-F, was approved in that case, but BAJI, 174-F, and the instruction given in that case differs from that given here in that the first sentence read, ''The reasonable value of the time lost, *if any*, from her employment by said plaintiff since her injury wherein she has been unable to pursue her occupation.'' The italicized words were not included here, and were given weight by the court in the Harris case. Defendant, however, does not complain that there is an assumption of time lost in the instruction, but that there is an assumption of disability.

The first sentence in effect defines what is meant by ''disabled'' in the second sentence as an inability on plaintiff's part to pursue her occupation. It does not equate ''time lost'' with ''disability,'' which would assume disability, but could only be understood by the jury as allowing them to award damages for such time as they found she was unable to pursue her occupation, without requiring them to accept plaintiff's testimony on this. Although the instruction could have been phrased more elaborately to circumvent defendant's objection, it does not appear, on any reasonable interpretation, to have been erroneous.

Judgment affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 19, 1958, and appellant's petition for a hearing by the Supreme Court was denied January 14, 1959.