[Civ. No. 19686. First Dist., Div. One. Apr. 25, 1962.]

LOTTIE B. NEYENS et al., Plaintiffs and Appellants, v. DONALD WILLIAM SELLNOW, Defendant and Respondent.

Johnson, Thorne, Speed & Bamford and John E. Thorne for Plaintiffs and Appellants.

Robert J. Popelka and B. J. Cougill for Defendant and Respondent.

SULLIVAN, J.—The plaintiffs, husband and wife, brought this action to recover for personal injuries sustained by the wife and property and other damage suffered by the husband, as a result of an automobile collision in which the wife was involved. The jury returned a verdict in defendant's favor. This appeal is from "the verdict, judgment, and denial of plaintiffs' motion for a new trial. . . ." An appeal does not lie from a verdict (*Robins* v. *Weis* (1950) 97 Cal. App.2d 144, 145 [217 P.2d 156]) nor from an order denying a motion for a new trial in a civil case. (*Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907]; Code Civ. Proc., § 963.) Plaintiffs' attempted appeals therefrom must be dismissed, since the correctness of the verdict and of the order denying new trial is reviewable upon appeal from the judgment.

The accident occurred on August 14, 1957, at about 5:15 p. m. at a point on Race Street in San Jose, opposite a parking lot and driveway of a Sears' store. The weather was clear. Traffic southbound was heavy. A center white line divided the northbound and southbound traffic. There were two southbound lanes of traffic, although they were not marked, and in addition, a parking lane along the west curb. The distance from the west curb to the center line was about 30 feet. On the other side of the line was a lane for northbound traffic about 10 feet wide.

The plaintiff Lottie Neyens, accompanied by a guest, was driving south on Race Street and the defendant was driving out of the Sears' parking lot, located on the west side of Race Street, intending to cross over the southbound traffic lanes, turn left and proceed north on Race Street.

The plaintiff testified that she was driving south on Race Street in the inside traffic lane next to the center line. She was familiar with the location of the Sears' store and knew that there were entrances to it from Race Street. She was

driving at a speed of about 15 to 20 miles per hour and did not slow down as she came up to the Sears' driveway. She never looked over to the right to see if anyone was coming out of such driveway. She did not know there was an accident until after it happened. She claimed that the "left-hand side of his front hit my fender and his grill and front hit the side of my fender." After the accident she noticed a stopped car in the lane to the right of her. She also believed that after the accident the left hand side of her car was across the center line.

The defendant testified that he had just picked up his wife at the Sears' store, had driven out of the parking area, and stopped his car about a foot back of the west curb. The southbound traffic was heavy and moving in two lanes. There were parked cars along the west curb. According to the defendant, he remained stopped for almost a minute, making traffic observations to his right and left. He saw little traffic northbound. A southbound car in the nearest or outside lane of moving traffic "came at an angle like he was going to turn into Sears parking lot and then he came to a stop." The defendant then moved out in the street and again came to a complete stop. He saw southbound traffic still going through in the next lane over. He remained stopped and waited for this traffic for about a minute, during which time he estimated that about a "dozen or more" cars went on by. Then a car in the inside southbound traffic lane stopped and waved defendant through with an arm signal which defendant interpreted as meaning "[t]hat he was going to wait for me to make my turn." He started "easing out again" but stopped as another car went by, apparently swinging partially into the northbound lane around the car stopped in the inside southbound lane whose driver had waved defendant on. He started again "[j]ust barely easing out" because the stopped car blocked his view to the left. "I no more started easing around just like that and I was hit." Plaintiff's car was being driven partially over the center line and on to the northbound traffic lane when the accident occurred. After both cars had come to a stop, over half of Mrs. Neyens' car was over on the wrong side of the road; defendant's car was about two feet from the line dividing the northbound and southbound. Mrs. Sellnow generally corroborated the above testimony.

The plaintiffs make two contentions on appeal: (1) That the evidence is insufficient to support either the implied

finding of the jury that the defendant was not negligent or the implied finding that the plaintiff Lottie Neyens was guilty of contributory negligence; and (2) the court committed prejudicial error in giving an instruction on the applicable prima facie speed limit.

We take up the first contention. It is apparent that the evidence relevant to both the issue of the defendant's negligence and the plaintiff's contributory negligence was in conflict. In each instance the issue presented a question of fact. ▮ Plaintiffs now attempt to have us reweigh this evidence and analyze the factual conflict. This is not our function. (*Berniker* v. *Berniker* (1947) 30 Cal.2d 439, 444 [182 P.2d 557].)

On the issue of the defendant's negligence, appellants ask: "Was the evidence sufficient to warrant a finding of negligence on the part of respondent (defendant)?" This is not the question before us. The proper question for our determination is whether the evidence, construed most favorably for the defendant, supports the implied finding that he was not negligent. It is clear that it does. The testimony of the defendant, corroborated by that of his wife, furnishes ample evidence from which the jury could have concluded that at all times while attempting to enter and cross Race Street he drove carefully, at a very slow speed, keeping a careful lookout and waiting successively for each southbound lane of traffic to stop. ▮ Although the "driver of a vehicle about to enter or cross a highway from any private road or driveway . . . shall yield the right of way to all vehicles approaching on said highway" (former Veh. Code, § 553 in effect at the time of the above accident, now Veh. Code, § 21804, without substantial change), such a driver, as the defendant was here, "may lawfully enter a highway so long as there is no vehicle so near as to constitute an immediate hazard." (*Pandell* v. *Hischier* (1959) 166 Cal.App.2d 693, 695 [333 P.2d 762].) The jury could have well believed from the foregoing evidence that both southbound lanes of traffic stopped, thus yielding the right of way to defendant and permitting him to cross and that his failure to see the plaintiff's car was not due to his negligence but to the plaintiff's negligence in driving around the stopped southbound traffic and partially into the northbound lane. Upon the evidence, the jury could have disbelieved the plaintiff and rejected her claim that she never swung over to the northbound lane, that there was no stopped car in the inside southbound lane, and

that, in effect, her car was in that lane and constituted an immediate hazard. Believing the defendant, they could have reasonably concluded that plaintiff's car did not constitute an immediate hazard to defendant.

Appellants urge upon us certain prior and allegedly inconsistent statements made by the defendant to the police and in his deposition, which were used at the trial for the purpose of impeachment. One of the alleged inconsistencies, dealing with defendant's traffic observation to the left, appears to have been explained at the trial. Nevertheless, even if the statements alluded to were conflicting, questions of the weight of the evidence, the credibility of witnesses, and the resolution of factual conflicts were for the jury to determine. (*Berniker* v. *Berniker, supra,* 30 Cal.2d 439, 444.)

There is also ample evidence supporting the implied finding of the plaintiff's contributory negligence. The jury could have reasonably concluded that the plaintiff did not keep a proper lookout with respect to the other traffic, that she saw the southbound traffic in her lane stopped, and that she attempted to pass the stopped car, partially driving over on the wrong side of the street.

Appellants' second contention involves the correction of the language of an instruction on speed. The record originally filed with us showed that the trial court instructed the jury that "[t]he prima facie speed limit that was in effect at the time and place of the accident involved in this case was *five* miles an hour." (Emphasis added.) The above was the concluding sentence of a somewhat long instruction on prima facie speed limits. After appellants, in their opening brief filed herein, contended that the giving of the above instruction constituted prejudicial error, the applicable prima facie limit being *twenty-five* miles an hour (former Veh. Code, § 511, now § 22352), respondent filed a motion before us, under rule 12 to correct the transcript on appeal. This motion was heard by this court on its April 1961 calendar, whereupon, acting under rule 12 (c), we ordered the reporter's transcript to be returned to the trial court for settlement of the alleged error.

Proceedings were had in the trial court on May 19, 1961, in the course of which the above instruction was corrected to read *"twenty-five"* miles an hour instead of *"five"* miles an hour and the record recertified. Appellants thereupon filed herein a motion to strike the foregoing order of the trial court

correcting the transcript on the grounds "that proper steps were not taken in correcting the record and that the trial court acted arbitrarily when making its order." Such motion was heard by this court on its July 1961 calendar and denied without prejudice to the raising of the point in the briefs on appeal. Appellants therefore urge that the trial judge acted arbitrarily and without taking the proper steps, when he corrected the record.

We have carefully examined the record of the proceedings had in the trial court with respect to the above correction of the record. The judge making the correction, who presided over the trial of this case, stated that he had a definite recollection that, when he gave the instruction, he actually said "twenty-five" miles an hour. He recalled checking the instruction in the Vehicle Code and believed it very unlikely that he would have said "five" miles an hour, which is not a speed limit prescribed by any specific provision of the code. Furthermore, it appears to us to be very unlikely that a speed of "five" miles an hour would have been mentioned or, if mentioned, would have escaped the attention of counsel for the parties. The original instruction on speed, which is the subject of this controversy, was before the court in the course of the proceedings for correction of the record, and apparently was marked BAJI 144-A. The record shows that the last sentence following the form (see Cal. Jury Instns., Civ. (4th rev. ed. 1956) No. 144-A), provided for a space before the last three words "miles per hour." In the space the figure thirty-five had been written and crossed out, and to the left was a question mark. The judge stated: "That's why I have a definite recollection, Counsel, of checking the speed limit, because that question mark is my own handwriting, and I went and checked, and I went and checked the speed limit to determine what it was." Although the judge did not testify in the above proceedings, his recollection is entitled to some weight. As stated in *Freitas* v. *Peerless Stages, Inc.* (1952) 108 Cal.App.2d 749, 763 [239 P.2d 671, 33 A.L.R.2d 778]: "[T]here is the fact that the trial judge who gave the instructions made the order correcting the transcript to make it reflect what he found to be what he actually said. Although the judge was not called as a witness at the hearing, his recollection, as evidenced by the order, is entitled to some weight." Contrary to the position appellants seem to take, we do not think that a busy trial judge must be endowed with such a superhuman faculty that he will recall the very

sounds of the words uttered in the instruction. We are satisfied that his recollection in this case was definite, as reasonable men understand that term, and that his correction of the record was proper.

The attempted appeal from the verdict of the jury and the attempted appeal from the order denying motion for a new trial are, and each of them is, dismissed. The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied May 15, 1962, and appellants' petition for a hearing by the Supreme Court was denied June 20, 1962.