[Civ. No. 40643. Second Dist., Div. Two. May 7, 1973.]

LILY EAGAR, Plaintiff and Respondent, v.
McDONNELL DOUGLAS CORPORATION et al.,
Defendants and Appellants.

**COUNSEL**

Haight, Lyon & Smith, Robert R. Rigg and Henry F. Walker for Defendants and Appellants.

Thomas M. Lynam and Ellis J. Horvitz for Plaintiff and Respondent.

## OPINION

**HERNDON, Acting P. J.**—In this appeal from a judgment rendered after jury trial in favor of plaintiff Lily Eagar (respondent) for personal injuries received in connection with a multiple car accident, we are called upon to review the jury instructions which defined the duty owed by one of the drivers. Finding no prejudicial error, we affirm.

### The Facts

Shortly after 7 a.m. on the Saturday of January 14, 1967, appellant James Angjelo (Angjelo), a security guard for appellant McDonnell Douglas Corp. (McDonnell), was completing his duties on the "graveyard shift" and preparing to leave work. Included among those duties was the opening and closing of the McDonnell parking lots. One of these lots is located on the southwest corner of Ocean Park Boulevard and Bundy Drive; this lot is encircled by a chain link fence and some shrubbery, with exit gates on Ocean Park and Bundy. This lot was not used by the McDonnell workers on Saturday, and pursuant to his duties as a security guard Angjelo had driven into the lot and locked the Bundy gate. It was as Angjelo was exiting from the Ocean Park gate that the accident occurred.

At this point, Ocean Park runs predominantly east-west, with a slight, but perceptible, curvature. Almost directly across the street from the exit herein involved, north-south Wellesley Avenue forms a "T" intersection with Ocean Park.

At the time of the accident the area was shrouded in heavy fog, with visibility approximately 100-150 feet, and the pavement was wet enough to measurably affect stopping distance.

Angjelo proceeded up to a stop sign erected by McDonnell that faced the interior of the parking lot and stopped. The sign is several feet (apparently about 25) back from the curb. His intention was to turn left onto Ocean Park and proceed west. He looked to his left, then to his right, then to his left again, seeing no traffic in either direction. He then proceeded directly into the street without stopping again at the curb. When he was completely into the boulevard, he saw the headlights of a westbound car about 15-20 feet from him. He came to a full stop, blocking both of the eastbound lanes. As the westbound vehicle passed in front of him, he heard the squeal of brakes and looked to his left for the first time since the stop in the parking lot and then saw an eastbound car about 15-20 feet away, driven by a Mr. Mason. Immediately thereafter the Mason car struck Angjelo's broadside, hurling Angjelo across the seat of his car,

stunning and injuring him. Angjelo used the car's communication radio to summon assistance.

After checking to see if Angjelo needed assistance, Mason moved his own car into the McDonnell parking lot and hurried on foot west along Ocean Park in an effort to stop traffic. The Angjelo car remained in the street.

Respondent is a vocational nurse who was preparing to go to work when she heard the collision from the kitchen of her apartment on Wellesley Avenue, approximately 100 feet away. She came out to investigate and, noticing that Angjelo appeared to be injured, approached his car (which was still blocking both eastbound lanes), and asked if she could call an ambulance or be of assistance to him.

While thus conversing with Angjelo, another car, this one driven by a Mr. Salazar, was traveling east on Ocean Park at about 23 miles per hour. He did not see the Angjelo car until it was only about 75 feet away and he was unable to stop in time to avoid a collision. This second collision caused the Angjelo car to be driven against respondent's hip, knocking her down and injuring her. She was helped off the street by another neighbor. The time between the two accidents was approximately four to eight minutes; respondent had been out in the street only a minute or so.

Respondent brought her action against appellants and the drivers of the two other cars. The jury verdict held each of the drivers liable for negligence and judgment was entered thereon. All of the defendants moved for a new trial, which motions were denied. Mason and Salazar did not appeal and the judgment against them has become final.

### Issues Presented

Appellants' sole claim of prejudicial error is characterized thusly: "The rule that a driver entering a highway from a private driveway shall yield the right of way to all vehicles approaching on said highway is subject to the qualification that such driver may lawfully enter the highway so long as there is no vehicle so near as to constitute an immediate hazard and the trial court erred in giving the unqualified instruction and in refusing to give the requested qualification as to said rule."

### Discussion

The instruction given by the court, of which appellants complain, was: "You are instructed that Section 21804 of the Vehicle Code of California

in force and effect at the time and place of this accident provided in part as follows:

"The driver of a vehicle about to enter or cross a highway from any private property, or private road or driveway or from an alley shall yield the right of way to all vehicles approaching on the highway.

"You are further instructed that the driveway from which the automobile driven by James Angjelo. entered Ocean Park Boulevard was a private driveway within the meaning of the provision of the Vehicle Code I have read to you."

In its place appellants requested the following instruction, which was refused: "The driver of a vehicle about to enter or cross a highway from a private driveway is required to yield the right of way to all vehicles approaching on the highway, but may lawfully enter the highway so long as there is no vehicle so near as to constitute an immediate hazard."

Appellants' contention that the duty of a left-turning vehicle is subject to an "immediate hazard" qualification is, *viewed in the abstract,* an unquestionably correct articulation of the law. (*Neyens* v. *Sellnow,* 202 Cal. App.2d 745, 748 [21 Cal.Rptr. 151]; *Pandell* v. *Hischier,* 166 Cal.App.2d 693, 695 [333 P.2d 762].)

The unassailable reasoning underlying this qualification was aptly expressed in the *Pandell* case, at page 695: "Literally, this section would require the prospective entrant from a private road to yield the right of way to all vehicles on the highway regardless of where they were. This would be an unreasonable interpretation. For that reason, the courts have interpreted *the section to mean that a prospective entrant from a private road may lawfully enter a highway so long as there is no vehicle so near as to constitute an immediate hazard.* [Citations.]"

■ Our analysis of this question must proceed with an eye toward the settled principles that govern appellate review of challenged jury instructions. "Instructions must be considered in their entirety, and, if, as so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable, even though by selecting isolated passages of single instructions they may in some respects be amenable to just criticism. [Citations.] In instructing a jury it is sufficient if the court gives a well balanced statement of the essential legal principles necessary to guide them in their deliberations, and when that is done a party is not prejudiced by refusal to give an additional instruction merely because it may be said to be applicable to the case from the viewpoint of the party offering it. [Cita-

tion.] . . ." (*Cucamonga County Water Dist.* v. *Southwest Water Co.,* 22 Cal.App.3d 245, 266 [99 Cal.Rptr. 557].)

Similarly, it was recognized in the *Pandell* case, on which appellants heavily rely, that "[a] party is not entitled to have the jury instructed in the particular phraseology selected by such party, even if the language selected states correctly an applicable rule of law, if the court does, properly, instruct on the issue involved. This elementary principle, supported by numerous cases, is stated as follows in 24 California Jurisprudence, page 806, section 79: 'Numerous cases establish the rule that it is not error for a court to refuse to give a requested instruction if the subject matter thereof is substantially incorporated in the instructions given. A party is not entitled to have the jury instructed in any particular phraseology, and may not complain on the ground that his requested instructions are refused if the court, of its own motion or otherwise, correctly announces the substance of the law applicable to the case; this is true even though the requested charges state the principles involved more clearly and definitely than those given.' [Citations.]" (*Pandell* v. *Hischier, supra,* 166 Cal.App.2d 693, 695-696.)

■ We are of the opinion that any error in failing to include the qualification *within* the Vehicle Code section 21804 instruction itself was obviated by the giving of BAJI instruction number 3.45: "If you find that a party to this action violated any one of the statutes just read to you and that such violation was a proximate cause of injury to another person or to himself, you will find that such violation was negligence *unless such party proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.*" (Italics added.)[1]

---

[1]In their reply brief, appellants refine their contention to suggest that in view of this unless clause, the jury was in effect told that it could find negligence on the basis of the improper (unqualified) section 21804 instruction and then shift the burden to appellants to justify this. The proper allocation of the burden, it is urged, should have been (if the qualification were not mentioned in the § 21804 instruction) to require the plaintiff to show that the venturing into the street under these circumstances was unjustified, rather than requiring defendants to show that it was justified.

Viewed in this light, the claim of error becomes far more plausible, but its triviality also becomes far more manifest. Considering the nature of the case, the evidence adduced and the arguments made, any such error would be clearly nonprejudicial. Whoever had or should have had the risk of nonpersuasion, the justification question here boils down to whether it was reasonable for Angjelo to venture forth into a dense fog under circumstances where it was clearly foreseeable that he might have to do what he actually did: block both eastbound lanes. That the jury didn't regard

That instruction effectively permitted appellants to argue the question of reasonableness or justification to the jury and we do not think that failure to instruct them as to the qualification unduly hampered appellants in this regard. The qualification was, after all, engrafted as a matter of common sense, in recognition that the Legislature obviously did not intend to require a yielding to a car "approaching on the highway" but still blocks away. Presumably, the jury would be aware of this limitation with or without specific instruction on the point.

Moreover, we are of the opinion that appellants' requested instruction would have been a misleading and perhaps even erroneous statement of the law as applied to the facts of this case. Consider the following scenario. At a given point in time (T1), there are cars approaching in the equivalent of the westbound lanes here that would be an immediate hazard to turn in front of. It will take until T2 for those cars to clear. Meanwhile, there is an eastbound car which is several hundred feet away at T1 so that it is not at T1 an immediate hazard, but by T2 this eastbound car will have reached the point where it is an immediate hazard. The rejected instruction seems to amount to saying that the turning vehicle may venture into the highway and claim the right to the area in the easbound lanes, blocking all eastbound traffic if necessary, if he can ever find a time when he can appropriate that territory and then rightfully *hold* it while waiting for an opening in the westbound lanes.[2]

There are several obvious reasons why any such implication must be avoided. Right-of-way rules have been described as simply establishing "a practical basis for necessary courtesy on the highway." (*Pandell* v. *Hischier, supra,* 166 Cal.App.2d 693, 696.) The implications of appellants' instruction are inconsistent with this notion. Common sense and the practices of safe drivers do not permit the process of a left turn and the territories involved to be fragmented in the manner anticipated by the proffered instruction.

Moreover, it must be borne in mind that the rule applicable to left turns is a *statutory* rule. In interpreting the statute, a qualification has been added which is *in the abstract* wholly proper. But that does not mean that

this as reasonable is hardly surprising, and it is inconceivable that they would have reached a different conclusion had the risk of nonpersuasion been allocated differently.

[2]The foggy setting of the instant case requires only slight modification of this statement of effect. It is true that Angjelo did not see the westbound car when he started venturing into the highway so the implications of appropriating territory are not as strong here. But under the circumstances, the emergence of an unseen westbound car (as actually happened), forcing the blocking and the eastbound lanes, was clearly a foreseeable risk.

the qualification, when applied to a specific factual setting, will necessarily tend to effectuate the legislative scheme. To have instructed that the Angjelo car could lawfully create a highly dangerous situation, or lawfully take the foreseeable risk of creating such a dangerous situation, simply because the hazard thus created was not immediate, would involve applying the judge-made qualification to a situation where neither reason nor logic nor any fair conception of the legislative purpose counsel its application. We can divine no reason to suppose that, viewed strictly as a question of who has the right of way,[3] Vehicle Code section 21804 authorizes the creation of such a hazard. Accordingly, we hold that in light of the circumstances of this case, the trial court's instructions were proper.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied June 4, 1973, and appellants' petition for a hearing by the Supreme Court was denied July 12, 1973.

---

[3]Of course, even if Angjelo had the right of way, he had a duty to exercise reasonable care to avoid an accident (*Uhl* v. *Baldwin,* 145 Cal.App.2d 547, 552 [302 P.2d 841]), and the jury was so instructed. This is a separate question from the one being considered in the text. But it is worth noting that, even if we were to assume that Angjelo had the right of way, the evidence of his negligent exercise of that privilege is so compelling that we cannot say that a miscarriage of justice resulted. Thus, even if error were assumed, it must be regarded as nonprejudicial.