[Civ. No. 19085. Second Dist., Div. One. Jan. 6, 1953.]

FORREST A. BAKER, an Incompetent Person, Appellant, v. B. F. GOODRICH COMPANY, Respondent.

Edwin C. Boehler, Francis R. Dwyer and Jerrell Babb for Appellant.

Crider, Runkle & Tilson and Clarence B. Runkle for Respondent.

PATROSSO, J. pro tem.—Plaintiff instituted this action to recover damages for personal injuries alleged to have been sustained as a result of defendant's negligence. From a judgment in favor of the defendant entered upon the verdict of the jury plaintiff appeals, contending that the trial court erred in refusing to instruct upon the doctrine of res ipsa loquitur, the applicability of which under the circumstances is the sole question presented.

Appellant was engaged in mounting and inflating a new tire of respondent's manufacture and while so doing a violent explosion occurred throwing the appellant, as well as the tire and wheel, with great force into the air, as a result of which appellant sustained serious and permanent injuries rendering him mentally incompetent, with loss of memory, as a result of which he was incapable of testifying upon the trial.

The evidence discloses that appellant at the time of the accident and for more than a year prior thereto, was employed as a service mechanic by an automobile agency. The tire in question was one of a number purchased from respondent by appellant's employer approximately a year prior to the accident. This shipment of tires was delivered from the respondent's place of business located in the city of Los Angeles to the premises of appellant's employer in the city of Burbank by a truck carrier employed for that purpose and paid for by the respondent. While in the course of transportation the tires were handled in the usual and customary manner, being laid flat in the truck and stacked one upon the other. No heavy objects were placed upon the tires and apparently no untoward incident occurred during the course of the journey. Upon arrival at the employer's premises the tires were placed in a rack or cradle located about 8 or 10 feet above the floor of the garage "where it is cool and shady" and the particular tire in question remained in this rack until delivered to appellant for mounting on the day of the accident.

The tire in question was being mounted by the appellant upon a so-called Chrysler safety rim which, because of a small ridge or hump designed to cause the bead of the tire to rest in the groove on each side of the flange, makes the mounting of a tire thereon somewhat more difficult than on an ordinary rim. Immediately prior to the explosion the appellant was observed by a fellow workman in the act of mounting the tire. At the time the wheel and tire were lying flat upon the ground and when first observed by the witness in question the tube was in the tire and the first bead was already on the rim. Appellant then proceeded to push the tire down on one side, getting it started by the use of a tire iron and then "finished up" with a rubber mallet. He then introduced air into the tube when a little thud or pop was heard, indicating to the witness that the tire was then in place. During the operation appellant was observed checking the air pressure with a gauge "several times." The source of the air used in inflating the tire was a compressor having a maximum capacity of 150 pounds pressure and so constructed as to automatically shut off when this pressure was attained.

The tire was designed to withstand a maximum pressure of from 168 to 170 pounds and to customarily carry approximately 30 pounds. After the accident an examination of the tire disclosed that one of the beads was entirely broken, presenting the appearance of having "been cut right through." "The break was about an inch and a half on the radius line of the tire and all that was holding the bead was a little fabric on the tire." The tire, however, bore no evidence of scuffs or scars or any marks thereon which could have been caused by the use of a tire iron in mounting it. Within the bead there are 20 cold drawn steel wires each somewhat larger than a 32d of an inch in diameter and all of these were completely broken. The tire was produced upon the trial and introduced in evidence, as were also X-ray films thereof.

In addition to the foregoing, qualified expert witnesses were produced by the appellant who testified that the bead wires at the point of the break were kinked and that this could have been caused in the process of manufacture when the tire was taken out of the mold by the hydraulic extractor or by the stripper when pulling the air bag out of the tire. A bead, if it breaks at all, will break at the kink, and all of the wires can be broken in the course of manufacture without showing

on the outside of the tire. In the opinion of one of the expert witnesses it would be impossible to break a bead which was not otherwise defective by the use of a tire iron; he having observed attempts to break a bead with a 6-foot bar without success. A broken wire in a bead can be detected without cutting into the tire or bead by manipulating the bead, and the presence of a broken or kinked bead can be determined by inspection by feeling around the inside of the tire. Upon inspecting the tire in question an expert testified that he found evidence of a kinked bead at the point where the break occurred; also that in his opinion enough air could not be put into a tire to break a good bead, as the sidewalls of the tire would give way first and also that the pressure "would pull the flange off the rim before it would even break the wires." In the opinion of this expert the bead was "defective to start, and in the process of pulling it out of the mold and curing, those wires were not in place where they should be, and that has a lot of tendency to bend a lot easier and break."

As opposed to the foregoing, evidence was produced upon behalf of the respondent to the effect that the plaintiff did not use the proper method or procedure in mounting the tire in that after the mounting was completed plaintiff did not pick up the tire and wheel off the ground and look at the lower side or examine the bottom bead to see that it was in proper place before fully inflating the tire; and that the tube was one that had been previously used and was old, rim-chafed and stretched. In the opinion of defendant's witnesses by reason of the manner in which the tire was mounted by appellant the tube was pinched between the bead and the rim, causing the air to escape from the tube and the resultant explosion; also that all of the wires in a bead could be broken in the process of mounting the tire; one of the witnesses having observed beads broken while the tire was in the process of being mounted. An expert also expressed the opinion that the pinching of the tube and the resulting increased pressure and strain on the bead could have caused the bead to break. Other witnesses testified that they had never seen a broken bead in a tire at the conclusion of the manufacturing process. Still another witness testified that during a period of years while he was employed by the Goodyear Tire and Rubber Company he had seen only two tires with beads broken in the manufacturing process and that in both instances the carcass or fabric of the tire was badly torn and the break in the bead wires was readily observable. In addition there was

testimony in considerable detail as to the process employed by respondent in the manufacture of its tires, and the jury were taken to the respondent's plant and observed it in operation.

We have necessarily condensed the evidence introduced upon behalf of the respective parties for the record is a voluminous one. However, enough has been set forth to indicate the factual background against which the question presented is to be determined.

Much has been written upon the so-called doctrine of res ipsa loquitur and it has recently been the subject of an elaborate opinion by the Chief Justice in *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344], in the course of which substantially all of the authorities in this state dealing with the question are reviewed and wherein he undertakes to clarify the conflicting statements to be found therein. In the light of this comprehensive exposition of the subject it would be a work of supererogation for us to here undertake to again review the many authorities therein discussed and to which our attention is directed by the parties.

In *Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258], the requisites for the application of the doctrine of res ipsa loquitur are set forth as follows:

"The doctrine of res ipsa loquitur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of plaintiff.'"

With the foregoing as a standard we proceed to consider the evidence with the view of determining whether or not it is sufficient to meet each of the specified conditions.

As to the first requirement, no extended discussion is necessary for we hardly believe that it can be doubted that the accident here is of a kind which ordinarily does not occur in the absence of someone's negligence. Automobile tires properly constructed do not explode when inflated in the process of being mounted in the usual and customary manner upon a wheel designed to receive them.

The second prerequisite, namely, that it be made to appear that the instrumentality in question was within the exclusive control of the defendant does not in every instance require proof of such control by the defendant at the time of the accident; control at the time of the negligent act being

sufficient to satisfy this requirement under certain circumstances. Speaking of this the Supreme Court in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436], says: "Many authorities state that the happening of the accident does not speak for itself where it took place some time after defendant had relinquished control of the instrumentality causing the injury. Under the more logical view, however, the doctrine may be applied upon the theory that defendant had control at the time of the alleged negligent act, although not at the time of the accident, *provided* plaintiff first proves that the condition of the instrumentality had not been changed after it left the defendant's possession. (See cases collected in *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614, 617-618 [140 P.2d 369].)"

We do not doubt that the evidence here is sufficient to give rise to a reasonable inference that at least up to the time when appellant undertook to mount the tire upon the day of the accident the condition thereof had not been changed. As disclosed by our statement of the evidence, the tire was transported from the respondent's place of business to that of the appellant's employer by an agency selected by respondent and there is nothing to suggest that any damage was occasioned thereto while in the course of transportation. When received at the purchaser's place of business it was stored in a suitable place and manner, and the manager of the tire and tube construction department at the Los Angeles plant of the respondent testified that when stored in the manner described no deterioration would occur in the tire between the date of its manufacture and the day of the accident. Also, aside from the broken bead, the tire after the accident bore no outward evidence of having been subjected to any rough or unusual treatment. As was further said in *Escola* v. *Coca Cola Bottling Co., supra,* (p. 458) : "It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it. (*Cf*. Prosser, *supra,* p. 301.) If such evidence is presented, the question becomes one for the trier of fact (see e.g., *MacPherson* v. *Canada Dry Ginger Ale, Inc.*, 129 N.J.L. 365 [29 A.2d 868, 869]), and, accordingly, the issue should be submitted to the jury under proper instructions."

In the light of the foregoing we conclude that the evidence here was sufficient to require the submission to the jury of the question as to whether or not the tire was, at the time appellant undertook to mount it, in the same condition as when it left respondent's premises. (*Cf. Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 518 [203 P.2d 522].)

Thus, we are brought to a consideration of the third requirement, namely, that the accident "must not have been due to any voluntary action or contribution on the part of the plaintiff." In further explanation of this statement the court in *Zentz* v. *Coca Cola Bottling Co.*, *supra*, (p. 455) says: "Some cases have stated that the accident must not have been due to any voluntary action or contribution on the part of the plaintiff (see *Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Raber* v. *Tumin*, 36 Cal.2d 654, 659 [226 P.2d 574]; *Cavero* v. *Franklin Gen. Benev. Soc.*, 36 Cal.2d 301, 309 [223 P.2d 471]; *Druzanich* v. *Criley*, 19 Cal.2d 439, 444 [122 P.2d 53]; 9 Wigmore on Evidence (3d ed. 1940), § 2509). This is allied to the condition of control by the defendant and has also been employed as a means of showing that the defendant, rather than the plaintiff, had control and was responsible for the injury. (See *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436].) It should not be confused with the problem of contributory negligence, as to which defendant has the burden of proof, and its purpose, like that of control by the defendant, is merely to assist the court in determining whether it is more probable than not that the defendant was responsible for the accident. As recently held by the Supreme Court of Oregon in a well reasoned opinion, a plaintiff may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident if the evidence excludes his conduct as the responsible cause. (*Gow* v. *Multnomah Hotel*, 191 Ore. 45 [224 P.2d 552, 555-560, 228 P.2d. 791].)"

The foregoing quotation would seem to dispose of respondent's contention that simply because the accident occurred while appellant was engaged in mounting the tire, in the accomplishment of which it was necessary to exert various forces thereon, the doctrine of res ipsa loquitur is necessarily rendered inapplicable. In support of their contention in this regard counsel quote the following from *Escola* v. *Coca Cola Bottling Co.*, *supra*: "Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident. Its pur-

pose, of course, is to eliminate the possibility that it was the plaintiff who was responsible. If the boiler of a locomotive explodes while the plaintiff engineer is operating it, the inference of his own negligence is at least as great as that of the defendant, and res ipsa loquitur will not apply until he has accounted for his own conduct." In commenting upon the foregoing counsel say that the situation here "is an exact parallel to the case of the locomotive engineer referred to." With this we readily agree, but the question remains as to whether or not the appellant here "has accounted for his own conduct." ■ As said in the Zentz case the appellant, like the engineer in the example referred to, "may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident *if the evidence excludes his conduct as the responsible cause.*"

The language quoted from the Escola case by counsel for respondent, as a reading of the opinion readily discloses, was taken from Prosser on Torts, page 300. How and to what extent plaintiff must account for his own conduct is explained by the same learned authority in his oft-cited article *"Res Ipsa Loquitur in California,"* 37 Cal.L.Rev., 183, 201, as follows:

"[T]he plaintiff's mere possession of a chattel which injures him does not prevent a res ipsa loquitur case where it is made clear that he has done nothing abnormal *and has used the thing only for the purpose for which it was intended.*

"The plaintiff need only tell enough of what he did and how the accident happened to permit the conclusion that the fault was not his. Again he has the burden of proof by a mere preponderance of the evidence, *and even though the question of his own contribution is left in doubt, res ipsa loquitur may still be applied under proper instructions to the jury.*" (Emphasis added.)

Therefore, unless it can be said that the evidence here, as a matter of law, does not exclude "his (appellant's) conduct as a responsible cause," the fact that the accident occurred while he was engaged in the act of mounting and inflating the tire would not deprive him of the benefit of res ipsa loquitur. ■ Where the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present. (*Roberts* v. *Bank of America,* 97 Cal. App.2d 133, 137 [217 P.2d 129].)

A strikingly similar situation was present in *Jesionowski* v. *Boston and Maine R. Co.*, 329 U.S. 452 [67 S.Ct. 401, 91 L.Ed. 416, 169 A.L.R. 947]. That was an action to recover damages for the death of plaintiff's intestate alleged to have been occasioned by a derailment of cars of the defendant railroad. The accident occurred while the cars were being switched, and on behalf of plaintiff there was evidence tending to prove that the derailment was occasioned by a defective switch but in opposition to this defendant produced evidence tending to establish that the derailment was due solely to the negligent manner in which the deceased, a brakeman in the employ of the defendant, operated the switch upon the occasion in question. The trial court in submitting the cause to the jury gave appropriate instructions upon res ipsa loquitur, but upon appeal the Circuit Court of Appeals reversed upon the ground that, inasmuch as "the thing that caused the injury could have been Jesionowski's fault or it could have been the railroad corporation's fault" (154 P.2d 703, 705), the doctrine was not available to the plaintiff. The Supreme Court in setting aside the decision of the Circuit Court of Appeals and affirming the judgment of the trial court said (91 L.Ed. 416, 420):

"We cannot agree. Res ipsa loquitur, thus applied, would bar juries from drawing an inference of negligence on account of unusual accidents in all operations where the injured person had himself participated in the operations, even though it was proved that his operations of the things under his control did not cause the accident. This viewpoint unduly restricts the power of juries to decide questions of fact, and in this case the jury's right to draw inferences from evidence and the sufficiency of that evidence to support a verdict are federal questions. A conceptualistic interpretation of res ipsa loquitur has never been used by this Court to reduce the jury's power to draw inferences from facts. Such an interpretation unduly narrows the doctrine as this Court has applied it."

▇▇ We are of the view that the evidence in the case at bar which we have set forth at some length may reasonably be said to justify an inference (if drawn by the jury) that the defective condition of the bead was the cause of the explosion and that appellant's conduct did not contribute thereto. ▇▇ At the outset appellant, by reason of his incompetency and loss of memory, was entitled to the benefit of the presumption that in mounting and inflating the tire he

was exercising due care. (*Scott* v. *Burke,* 39 Cal.2d 388, 394 [247 P.2d 313].) Aside from this there was testimony, as already noted, that the tire bore no evidence of rough usage and was devoid of any marks that could have been made by the use of the tools which appellant enployed in mounting it; that it would be impossible to break a good bead with a tire iron such as that used by appellant; that the break in the bead could not have been occasioned by the pressure of the air introduced into the tire which was designed to withstand a pressure considerably greater than that which the compressor used for this purpose was capable of producing, and that the break occurred at a place where an inspection of the tire disclosed that the wires were kinked. With this evidence before it, the jury could reasonably conclude that appellant was not negligent, or if so that such negligence did not contribute to cause the accident. ■ True, there was evidence to the contrary from which the jury might reasonably infer that the tire was not defective and that the explosion and resultant injuries to the appellant were caused by the improper manner in which he undertook to mount and inflate the tire. This, however, but created a conflict which it was within the province of the jury to resolve and did not in and of itself remove res ipsa loquitur from the case.

Counsel for respondent also earnestly contend that the doctrine is inapplicable here because ''it cannot be said that this accident was more likely caused by respondent's than by appellant's negligence'' and ''the probability that the accident was caused by appellant's negligence is equally as great as that it was caused by any negligence of the respondent.'' In commenting upon this the court in *Zentz* v. *Coca Cola Bottling Co., supra,* uses the following language (p. 453): ''In determining whether such a probability exists with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses.''

■ Common knowledge does not tell us that it is more probable that a tire will explode while in the process of being mounted and inflated as a result of negligence upon the part of the person engaged in doing so than from an inherent defect in the tire itself. In the absence of expert testimony we would therefore find ourselves in the same position that the Supreme Court did in *Honea* v. *City Dairy, Inc.,* 22 Cal. 2d 614 [140 P.2d 369], where it refused to take judicial notice of the technical practices of the bottling industry and

therefore could not determine whether it could reasonably be concluded that a defect in a bottle was more probably than not the result of negligence. In such a situation we would be constrained to agree with counsel for respondent that the doctrine was inapplicable. Here, however, as in the Escola case, there is expert testimony as to the cause of the accident in question, but this is in sharp conflict. Upon the one hand it is made to appear that the explosion occurred because of the breaking of a defective bead and that the bead could not have been broken by the use of any of the tools employed by the appellant in mounting the tire or inflating it. On the other hand there is evidence that the bead could not have been broken during the process of manufacture, and that the only reasonable explanation is that the bead was broken by the appellant in the process of mounting the tire either by pressure exerted upon it or that the breaking of the bead was occasioned by the negligent manner in which the appellant mounted the tire as a result of which the tube was pinched between the tire and the rim resulting in pressure being exerted against the bead. We cannot undertake to say that either of these views is inherently improbable or unworthy of belief nor may we usurp the function of the trier of fact and undertake to weigh the testimony with the view of determining which is entitled to the greater weight.

"That conclusion is not for the court to draw, or to refuse to draw so long as there is enough to permit the jury to draw it; and even though the court would not infer negligence, it must still leave the question to the jury where reasonable men may differ as to the balance of probabilities." (Prosser *op. cit.*, 37 Cal.L.Rev. 194.)

Nor is it an indispensable prerequisite to the application of res ipsa loquitur that it be made to appear that the defendant has superior knowledge as to the cause of the accident. "(T)he doctrine may be applied even though the defendant is not in a better position than plaintiff to explain what occurred if it appears more probable than not that the injury resulted from negligence on the part of the defendant." (*Zentz* v. *Coca Cola Bottling Co., supra,* p. 456.)

Neither may we undertake to determine, as respondent invites us to do, whether the evidence adduced by respondent upon the trial was sufficient to rebut the inference of negligence arising from the application of the doctrine of res ipsa loquitur for this is purely a factual question for

the determination of the jury. (*Holt* v. *Henry,* 58 Cal.App.2d 168, 171 [136 P.2d 97].)

Finally respondent contends that the doctrine of res ipsa loquitur is rendered inapplicable by reason of the fact that respondent pleaded the defense of contributory negligence. No authority is cited in support of this statement and we believe it apparent from what has already been said that it is without foundation.

From the foregoing it necessarily follows that the trial court erred in refusing to instruct on the doctrine of res ipsa loquitur and the judgment is accordingly reversed, and the cause remanded for a new trial.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied January 26, 1953, and respondent's petition for a hearing by the Supreme Court was denied March 5, 1953. Edmonds, J., was of the opinion that the petition should be granted.