**James FLEMING, Plaintiff,**

v.

**DELTA AIRLINES, Defendant.**

**No. 68 Civ. 1323.**

United States District Court,
S. D. New York.

May 29, 1973.

Emile Z. Berman and A. Harold Frost, New York City, for plaintiff; Morton H. Feder, New York City, of counsel.

Bigham, Englar Jones & Houston, New York City, for defendant; James B. McQuillan, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

On the night of April 16, 1967, plaintiff, James Fleming, a medical doctor, took Delta Air Lines Flight 52 from New Orleans to Chicago. The flight made three scheduled intermediate stops at Jackson, Mississippi, Memphis, Tennessee, and St. Louis, Missouri. On its descent into St. Louis, the plane passed through a previously forecast turbulence causing Fleming to be thrown about in his seat, to strike his head against the window trim breaking his glasses and to experience severe chest and arm pains later diagnosed as angina pectoris. The crisis having passed, the plane landed safely and Fleming continued on to Rochester, New York, his ultimate destination. Since the attack of angina pectoris occasioned by the flight turbulence, Fleming has had recurring bouts of angina pectoris (the first of which occurred on July 11, 1967) resulting in his eventual retirement from the practice of medicine.

The facts pertaining both to the events of the night in question and to Fleming's attacks of angina pectoris are essentially undisputed. The conclusions which the parties draw from them are diametrically opposed. Fleming's position rests on two bases: 1) Delta's failure to warn its passengers of the possibility of turbulence of which it had advance notice giving them the option to postpone or cancel their trip was negligent; and 2) the fear occasioned by the turbulence caused a lasting debilitating heart condition from which he still suffers.

Delta, on the other hand, contends that the failure to warn passengers under the circumstances did not constitute negligence and that, even if it was negligent, the incident which resulted from its negligence produced at most the contemporaneous episode of angina pectoris, but not the subsequent attacks.

*I. Negligence.*

The testimony of Fleming's meteorological expert and the various meteorological reports which were introduced in evidence establish that the pilot of Flight 52 had available to him, prior to his departure on the Memphis to St. Louis lap of the trip, information which should reasonably have led him to foresee the possibility of encountering the type of

turbulence which in fact occurred. The predicted weather conditions included heavy thunderstorms, surface wind gusts of 50 to 70 miles per hour, cloud tops to 45,000 feet, isolated tornadoes and hail storms, and moderate to severe turbulence.

■ Such conditions aloft, although possibly not extreme enough to prevent take-off, are sufficiently serious to be a matter of significant concern to prospective travellers. Although an airline must bear the ultimate responsibility for deciding whether conditions permit a safe flight, it need not and, we think, must not arrogate to itself a decision which rightly belongs to each passenger, namely whether to fly under conditions which, although not hazardous, might prove to be emotionally or physically traumatizing.

■ As the incident which gave rise to this litigation demonstrates, conditions may be dangerous to some and not to others. Clearly, an airline cannot be expected to screen the former from the latter. D'Aleman v. Pan American World Airways, 259 F.2d 493, 494 (2d Cir. 1958). However, it owes its passengers the duty to share with them information indicating such serious weather disturbances, so that they can choose for themselves whether they are physically and emotionally capable of undertaking the trip and wish to do so.

■■ In concluding that Delta's failure to warn Fleming of the possibility of serious weather disturbances of which it had advance notice was negligent, we agree with those courts which have held that common carriers owe their passengers the highest degree of care (Wallin v. Greyhound Corp., 341 F.2d 521 (6th Cir. 1965); Southeastern Aviation, Inc. v. Herd, 209 Tenn. 639, 355 S.W.2d 436 (1962) and are mindful that under federal law there is a "duty resting upon air carriers to perform their services with the highest possible degree of safety" (49 U.S.C. § 1421(b)).

## II. Causation.

■ We turn to the difficult question whether the fear experienced by Fleming during the St. Louis landing caused his entire subsequent history of angina pectoris. We conclude that the evidence is so evenly weighted on this issue that Fleming has failed to meet his burden of establishing his case by a preponderance of the evidence.

Fleming's medical specialist, a general practitioner, hypothesized that, although he suffered from hardening of the arteries, he did not have a pre-existing myocardial infarction. The angina pectoris condition was, therefore, not caused by a prior heart ailment, but was the direct result of the incident on Flight 52, causing fright, an onrush of adrenalin and the breaking off of a plaque from a wall of the arteries with resultant occlusion. The most persuasive evidence supporting this theory is the fact that, prior to the flight, Fleming had led an active, strenuous life as a surgeon and a sportsman without ever experiencing the symptoms associated with angina pectoris.

On the other hand, however, Delta's expert, a cardiological specialist, testified that the process described by Fleming's expert would have constituted a heart attack and could not have occurred without affecting Fleming's electrocardiogram (which concededly remained unchanged throughout the period in question). Furthermore, he pointed up the significance of EKG indications of a myocardial infarction dating back to 1959 [1] or earlier and posited the theory that this pre-existing condition was the cause of the angina pectoris incident on the plane and the separate episodes which followed. According to his testimony, each such incident would have had a separate direct stimulus, such as fear, fatigue, exertion or cold. Thus, the fear occasioned by the turbulence would undeniably be the direct cause of the im-

---

1. Fleming's EKG's from 1959 on indicated "Q" and "T" wave abnormalities. The former were interpreted by his expert as being indicative solely of tranverse positioning of the heart, not of a prior myocardial infarction.

mediately following attack, but of that attack alone.

On the record thus presented, we are unable to say conclusively which hypothesis is on its face more persuasive. Moreover, we cannot disregard the fact that Delta's expert is a professional cardiologist, while Fleming's is merely an internist with an interest in cardiology and is the plaintiff's close friend.

Accordingly, Fleming has not met the burden of proof with respect to the later attacks of angina pectoris. He cannot, therefore, recover for them or for the loss of his livelihood and recovery must be limited to the pain and suffering occasioned by the in-flight incident and the almost contemporaneous attack of angina pectoris.

The above constitutes the court's findings of fact and conclusions of law. To determine what damages are due as a result of the pain and suffering occasioned by the attack of angina pectoris suffered by Fleming on April 16–17, 1967, we instruct the parties to submit supplementary briefs on that question. Such briefs should refer to facts in the record or, if additional facts are needed, should indicate why they are necessary.

It is so ordered.