39 F.3d 1186
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Herbert S. ADAIR, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-55520.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 7, 1994.*
Decided Nov. 1, 1994.
 
 1
 Before: FLETCHER, BOOCHEVER, and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff Herbert Adair appeals from the judgment for defendant after a bench trial on his medical malpractice claim brought under the Federal Tort Claims Act, 28 U.S.C. Sec. 2671 et seq. We affirm.
 
 I.
 
 4
 Adair sought to turn what started out as a claim of negligent performance of surgery into a claim that the doctor had not secured his informed consent to perform the surgery. This latter claim is not reflected in the pleadings or the pre-trial order. On appeal, Adair contends that the district court erred by finding that he had not met his burden of proof on the informed consent claim. Adair also contends that the district court erred by requiring expert testimony for his informed consent claim. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 5
 II. IMPLIED CONSENT TO TRY INFORMED CONSENT CLAIM
 
 
 6
 At the commencement of the trial, Adair alluded to the fact that he would be introducing evidence of lack of consent. The district court judge in effect stated that she would rule on proffers of evidence as required as the trial proceeded. Adair's whole case was his own testimony. The only testimony that conceivably related to consent was Adair's description of his brief conversation with doctors at the hospital.[1]
 
 
 7
 A district court's order denying a Rule 15(b) motion to conform the pleadings to the evidence is reviewed for an abuse of discretion. Campbell v. Trustees of Leland Stanford Jr. Univ., 817 F.2d 499, 506 (9th Cir.1987).
 
 
 8
 This record does not support Adair's contention that the informed consent claim was properly raised under Rule 15(b). Adair claims that the defendant's failure to object to his testimony that he claimed was relevant to informed consent indicates implied consent to trial of the claim. See Fed.R.Civ.P. 15(b). However, Adair's evidence at best had only a tangential relation to the issue of informed consent and failed to put the defendant on notice that a new issue was being introduced. LaLonde v. Davis, 879 F.2d 665, 667 (9th Cir.1989); Consolidated Data Terminals v. Applied Digital Data Sys., 708 F.2d 385, 396 (9th Cir.1983); Cole v. Layrite Prods. Co., 439 F.2d 958, 961 (9th Cir.1971). Accordingly, we find no abuse of discretion in denying Adair's Rule 15(b) motion to add informed consent.
 
 III. BURDEN OF PROOF ON INFORMED CONSENT
 
 9
 The district court's factual findings are reviewed for clear error; the determination of whether established facts constitute negligence is a mixed question of law and fact, and review is de novo. Barnett v. Sea Land Serv. Inc., 875 F.2d 741, 745 (9th Cir.1989).
 
 
 10
 We conclude that the district court did not err in finding that Adair had not met his burden of proof on the informed consent issue, even were we to assume that it had been properly raised. See Mathis v. Morrissey, 13 Cal.Rptr.2d 819, 828 (Cal.Ct.App.1992) (stating California rule for burden of proof); Johnston v. Pierce Packing Co., 550 F.2d 474, 476 n. 1 (9th Cir.1977) (applying state law to burden of proof issue).
 
 
 11
 In California, lack-of-informed consent torts fall into two categories: battery and negligence. Cobbs v. Grant, 502 P.2d 1, 7-8 (Cal.1972). Battery occurs when the operation performed was "substantially different" from the one for which consent was obtained or where the patient did not consent to any treatment. Id. Adair did not present evidence concerning either lack of consent or "substantial difference." Negligent failure to inform occurs when the doctor fails to inform properly and a reasonable person who is adequately informed would not have consented to the surgery. Id. at 11-12; Kohler v. Aspen Airways, Inc., 214 Cal.Rptr. 720, 726 (Cal.Ct.App.1985). Adair's hip prosthesis had been broken by his fall. He was in pain and immobilized. He utterly failed to introduce evidence to support a finding that a reasonable person would not have consented to the surgery under those circumstances. Accordingly, the district court properly found that Adair did not meet his burden of proof.
 
 IV. EXPERT TESTIMONY FOR INFORMED CONSENT
 
 12
 Adair's claim that the district court erred by requiring expert testimony on the issue of informed consent rests on an incorrect factual premise. The court below did not require expert testimony on informed consent claim in all circumstances--only where appropriate, for example, where the issue turned on the emotional state of the patient and the potential effect of the disclosures. In any event, we need not decide whether expert testimony is required here since Adair is procedurally barred from advancing the claim.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Q. Who at the hospital did you talk to after being admitted at Martinez?
 A. Dr. Pashman.
 Q. When was the first time that you saw Dr. Pashman?
 A. As I recall, I was there several days. He introduced himself and said, "I am Dr. Pashman. I am going to operate," and he asked who had done the operation before. I said, "Dr. Finerman." He said, "I am familiar with Dr. Finerman, and we hope to emulate him and do as good a job as he did."
 Q. Is that all that happened at that first meeting?
 A. Yes.
 Q. When did you see Dr. Pashman again?
 A. I didn't see him until just before the operation.
 Q. Meaning the day of the operation?
 A. The day of the operation.
 Q. What time of day or night was the operation scheduled?
 A. I think it was about 11:00 in the morning.
 Q. And you saw Dr. Pashman at that time?
 A. Yes. He came to me and said, "We are running a little late.
 We are waiting for a doctor named McGann to come over and start the operation for us so it runs smoothly, but we will get you into the operation room and put you under general anesthetic as soon as possible."
 Q. Did that happen?
 A. Yes.